Cooper v. State.

AFFIRMED.

PARIS G. COOPER v. STATE OF NEBRASKA.

FILED DECEMBER 18, 1914.   No. 18,708.

1. **Criminal Law:** ERROR: REVIEW. Where the evidence in a criminal case tried in the county court is certified to the district court in the form of a bill of exceptions, which is used therein to maintain a petition in error filed in that court, this court, in a proceeding in error to review the judgment of the district court, will examine the entire proceeding, and affirm or reverse the judgment of the district court as the law demands.

2. **Municipal Corporations:** DISORDERLY HOUSES: LEGALITY. The maintenance of houses of prostitution may not lawfully be permitted in a city, although the purpose is to segregate immoral persons from the better class of citizens, for the protection of the latter from the force of evil example and dangerous associations.

3. ———: ———: SUFFICIENCY OF EVIDENCE. The evidence examined, and *held* sufficient to sustain the judgment of the district court.

ERROR to the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Justin E. Porter, William P. Rooney, Earl McDowell* and *Allen G. Fisher,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

HAMER, J.

The plaintiff in error, hereafter called the defendant, seeks to review the judgment of the district court for Dawes county. He was tried before the county court under a complaint containing two counts. The first charged him with being the owner of a certain building within the county of Dawes, and with leasing said building to one W. H. Allen for the purpose of keeping therein a house of ill fame and a place for the practice of prostitution and lewdness. The second count charged him with owning and controlling a certain building in said county of Dawes, and unlawfully and knowingly permitting the same to be used by one W. H. Allen and divers other persons for the practice of prostitution and lewdness. There was a trial before the county judge on an amended complaint, which charged that the building specified in the original complaint was situate on lot C, in the town (now city) of Crawford, in said county, and that it was wrongfully and wilfully leased to John Doe and Jane Roe, whose true Christian names were unknown, and for the same purpose as that charged in the original complaint. The second count charged that the building was on lot C, in the town (now city) of Crawford, in said county, and that the defendant wrongfully, unlawfully, knowingly and wilfully permitted said building to be used by Pearl Darrah and Jane Roe for the purpose charged in the original complaint. Another defendant was charged with the defendant herein, but was not arrested. The trial was had on the 11th day of March, 1910, before the county judge, and the defendant was convicted on the first and second counts of the amended complaint, and sentenced to pay a fine of $50 on each count, together with the costs; and there was an objection to the bill of exceptions, but the bill was

finally settled and allowed and filed in the district court. The case was heard in that court, the judgment of the county court was affirmed, and the defendant has brought the case to this court on petition in error. The record contains the bill of exceptions allowed by the county judge and the bill of exceptions allowed by the district court, and the question presented is: Was the evidence suffi-cient to sustain the judgment.

While the evidence for the prosecution may not be quite as clear and as strong as could be desired in order to sustain the judgment of the county and district courts, it nevertheless sufficiently establishes a very peculiar and un-usual condition of affairs. It shows that the defendant and others, of the city of Crawford, in Dawes county, as-sociated themselves together with a view to segregating the immoral persons in said city who were engaged in the practice of prostitution and lewdness from the other residents of the city, and to that end there was built by certain persons, whose names do not very clearly appear in the proof, two houses in which there were to be main-tained establishments for the practice of prostitution and lewdness. One Leona Bowdish testified to a residence in Crawford of six years, to knowing the defendant Cooper, and Mr. Hand, Mr. Bruer, the firm of Stanton & Son, and others connected with the unlawful enterprise. She was a stenographer employed in the office of Stanton & Son, and drew up a contract between the Stantons and Mr. Cooper for the construction of two houses on outlot C, at Craw-ford. The contracts were drawn in September or October, 1909, and were signed by John Bruer, P. G. Cooper, who is the defendant, Joe Hand and C. R. Ivins, also by Stan-ton & Son. The parties engaged gave her a blank contract and dictated what she should put into the blanks. She wrote in what was dictated to her, and put in the names as she was directed, and Mr. W. H. Allen testified that he rented the two houses; that he made a contract with Joe Hand. Joe Hand is shown by the evidence to have been the "manager." Hand was to collect the rent. Allen was to pay $100 a month for each house. Allen testified that

he paid for the furniture that went into the houses, and that he delivered possession of the houses to Pearl Darrah; that he sold the furniture to her, and assigned his lease to her. He claimed that the lease had been drawn in a lawyer's office in Crawford. He named the lawyer and a man named Winters. He said Winters was a partner with him at the start. He was unwilling to testify whether the name of the defendant, Cooper, was on the lease, but he thought it might have been; but he said Cooper was not in the capacity of running the houses. He testified that Joe Hand, whom he believed to be a policeman in Crawford, was supposed to be the owner.

The lawyer, who received the lease between Allen and Joe Hand, testified that the lease was at once destroyed, and that another lease was drawn up between Joe Hand and Pearl Darrah. A lease between Joe Hand, president of the Crawford Realty Company, and Pearl Darrah was introduced in evidence. The acknowledgment bore date December 23, 1909. It purported to be made between the Crawford Realty Company, by Joe Hand, its manager and president, and the said Pearl Darrah. This lease provided that the rent should be $200 for every month, payable in advance. Joe Hand appears to have paid by checks, $1,597.32, presumably toward the construction of the buildings. He also got a receipt from William Stanton & Son for $1,500. He also got a receipt for $25 from A. O. Antrim. Receipts are in the bill of exceptions for painting and plumbing and heating. There is also in the bill of exceptions a contract concerning the said premises as outlot C, in block No.——. The Pioneer Townsite Company signs this contract, by one B. M. Hewitt, its president. The contract purports to be given by the Pioneer Townsite Company to C. R. Ivins and P. G. Cooper, of Dawes county, and state of Nebraska. It is entitled "Surrendered Contract No. 12,274."

Joe Hand testified that he had some bills in his possession which related to the business "of the Crawford Realty Company, or this real estate." He testified that he had paid the bills; that he also paid the checks. At the sug-

gestion of counsel, he submitted the papers as evidence. He testified that the money was expended upon "the houses on outlot C, the property in controversy." Hand testified that he was street commissioner and police officer of the city of Crawford; that he collected from the tenants of the houses on outlot C any moneys by way of donations, so called, by order of any of the city officers; that he turned the money over to the city treasurer, and took the treasurer's receipt for it. Hand also testified that he had been connected with the enterprise all the time. He testified that he was "manager;" that he had ordered the stuff as manager, and paid the bills as manager; that the company included "whoever they would take on when they incorporated. Q. They have not incorporated yet? A. No, sir. Q. Who appointed you as night watch, or police commissioner? A. Why, the mayor and city council." He then testified that he commenced to collect from the inmates of these houses in December; that he collected $100 in December and $200 in January. He also testified that the contract price for building the houses was $2,500; that that was Mr. Stanton's bill. "Q. Now, you knew all the time you were making these collections that they (the houses) were occupied and used for purposes of prostitution? A. Certainly."

Where the judgment of a court of general jurisdiction is claimed not to be regular, the error alleged must be shown by an exhibition of the record. *Wright v. State,* 45 Neb. 44. This has not been done in this case. We are unable to say that the judgment is not sustained by the evidence.

The judgment of the district court is

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.